AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

United States of America
v.
Stephane Brice

*Defendant(s)*

Case No. 6:25-mj-1317

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of March 19, 2025 in the county of Orange in the Middle District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 115(a)(1)(B) | Threats Against Federal Officials With Intent to Impede, Intimidate, or Interfere with a Federal Official While Engaged in the Performance of Official Duties or With Intent to Retaliate Against |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

[signature]
*Complainant's signature*

Special Agent Jessica Hurak-TIGTA
*Printed name and title*

Sworn to before me over videoconferencing or other reliable electronic means and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: 4/4/25

[signature]
*Judge's signature*

City and state: Orlando, FL

LESLIE HOFFMAN PRICE MAGISTRATE JUDGE
*Printed name and title*

6:25-mj-1317

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Jessica Hurak, being duly sworn, state as follows:

1. I make this affidavit to establish probable cause in support of criminal complaint against Stephane BRICE. This affidavit sets forth probable cause that, on or about March 19, 2025, in the Middle District of Florida, and elsewhere, BRICE threatened to assault a federal law enforcement officer, in violation of 18 U.S.C. § 115(a)(1)(B).

2. I am a Special Agent with the United States Treasury Inspector General for Tax Administration (TIGTA) in Tampa, Florida. I have been so employed since February 2024. TIGTA is the federal agency charged with protecting the integrity of the Federal tax administration by detecting and preventing fraud from occurring and by investigating allegations of criminal violations that have already occurred. During this last year with TIGTA, I have investigated threats made against IRS employees and buildings, and theft of government funds investigations.

3. I have attended and received certification from the TIGTA training academy at the Federal Law Enforcement Training Center. Before, I was a Special Agent for the Department of Homeland Security, Homeland Security Investigations (HSI) for 15 years. During my employment with HSI, I investigated various crimes, including drug crimes, human exploitation crimes, and financial crimes.

4. I make this affidavit based on my experience and background as a law enforcement officer, including my experience with TIGTA and HSI, my personal participation in the investigation, and information provided by other law enforcement

officers, investigators, agency personnel. Unless otherwise stated, the information in this affidavit is either personally known to me, has been provided to me by other individuals, or is based on a review of various documents, records, and reports. Because this Affidavit is submitted for the limited purpose of establishing probable cause, it does not contain every fact known by me or the United States.

## STATUTORY AUTHORITY

5. Pursuant to 18 U.S.C. § 115(a)(1)(B), it is a crime for any person to threaten to assault, kidnap, or murder a Federal law enforcement officer, or an official whose killing would be a crime under such section, with intent to intimidate, or interfere with such law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such law enforcement officer on account of the performance of official duties. Under this section, "Federal law enforcement officer" means any officer, agent, or employee of the United States authorized by law or by a Government agency to engage in or supervise the prevention, detection, investigation, or prosecution of any violation of Federal criminal law. 18 U.S.C. § 115(c)(1).

## PROBABLE CAUSE

6. On or about March 18, 2025, Internal Revenue Service (IRS) Contact Representative, Victim 1, received a call from a taxpayer identified as Stephane BRICE concerning the status of his Tax Year 2021 Federal income tax return refund check. I reviewed law enforcement reports and information and communicated with Victim 1 about the phone call.

7. In my training and experience, general calls by the public to the IRS are routed around the United States and Puerto Rico. When Victim 1 received BRICE's call, she was physically located at an IRS Office in Puerto Rico. The call lasted approximately one hour and thirty minutes.

8. At the outset of their conversation, to verify the caller's identity, Victim 1 asked specific personally identifying information such as, name, social security number, address, date of birth, past job information, and his parents' information, all of which BRICE confirmed.

9. Victim 1 stated BRICE was asking for his 2021 tax return and why he was unable to receive it. BRICE stated he had to go in person in the Orlando IRS office to verify his identity, but did not understand why the IRS still would not release the funds to him. Victim 1 said that BRICE grew more and more frustrated and stated how unhelpful previous IRS employees have been to him. BRICE began accusing Victim 1 and the IRS as a whole for stealing his money. Victim 1 stated BRICE threatened to "kill someone" then specifically threatened to "kill each person by taking their off their heads so that everyone would know it was me and that would be my signature when I killed."

10. After BRICE repeatedly threatened Victim 1, she pressed a panic button, which is a way IRS employees can indicate they feel threatened. The IRS's system then recorded the remainder of the call, which lasted about seven minutes. I reviewed the recording. During the beginning of the recording, Victim 1 asked BRICE to keep calm and not act in any way he regretted. BRICE's tone of voice appeared contentious

and angry. In the recording, when BRICE explained his frustration with not being able to receive his tax refund and the hardships of his life, the below exchange occurred:

> BRICE: **[W]hich I don't care about if I gotta take a life for what's mine. You know what I mean by that?" Not one, multiple if I have to** . . . but what's mine is what's mine, ya know what I'm sayin'. I'm not tryin' to threaten you 'cause I don't know what office you at . . . but (unintelligible) actually see my face walkin' in . . . commit, not suicide . . . commit some mother f***** crazy ass crime, **you're gonna be sittin' there shaking in your chair lookin' like 'oh my god he really done this shit'**...yes I'm crazy like that.
>
> Victim 1: Sir . . . Sir, I'm so sorry to interrupt you . . . at this moment I do have to end this call.

11. At this point in the recording, Victim 1 ended the call. She reported the incident to her supervisor. IRS then directed the reported threat for investigation to a TIGTA Special Agent (SA), Victim 2. Victim 2 is an agent of the United States authorized by TIGTA to engage in or supervise the prevention, detection, investigation, or prosecution of any violation of Federal criminal law. I have conferred with Victim 2 about the following events, his investigation efforts, and all reports and information related thereto.

12. On the same day, Victim 2 attempted to physically locate BRICE at an address in Winter Haven, Florida, associated with him through law enforcement research, which yielded negative results.

13. On March 19, 2025, Victim 2 obtained a phone number (813) 904-3786 through a law enforcement database connected to BRICE. Victim 2 was in Winter Haven, Florida (located within the Middle District of Florida) when he called the

phone number and asked the person who answered if he was Stephane BRICE, which the caller confirmed. Victim 2 identified himself as a special agent with the Treasury Department and identified the purpose of his call—specifically, that he was calling about a threat BRICE made to an IRS employee the day before. Victim 2's body worn camera recorded the phone call with BRICE, which I reviewed. The call lasted approximately 30 minutes. At the beginning of the call, BRICE's tone of voice appears agitated, as he raised his voice and often spoke over Victim 2. About 1 minute and 13 seconds into the call, Victim 2 stated, "It is a violation of law to make a threat to/against a federal employee . . . we gotta be clear on this, that if you make any threats to any IRS employee or any federal employee, it's a violation of law." Victim 2 reiterated this admonishment to BRICE repeatedly throughout the call. After Victim 2's warning, BRICE made the following threats:

> BRICE: Y'all can't even fucking do your job. Bitch ass nigga. You wanna tell me about my fucking money nigga? Talking about making a threat. Fucking shut that mother fucking threat up your ass. And you wanna know where I'm at. I'm in fucking Georgia, my nigga. Come up wherever I'm at, my nigga. **Cut your fucking head off. That's a threat bitch ass nigga.** You wanna know about threat.
>
> BRICE: How mad could I be my nigga? I would rip motherfucking soul through this phone screaming if I was real deal Mad nigga. You don't know who the fuck you dealing with.
>
> BRICE: Bro. You brother. **I don't give a fuck how you can think you was, I would chop your ass up like a real Sian dude, bro. And burn your fucking house down with all your children and your family inside this bitch.** Fuck on with you.
>
> BRICE: As a mother fucking threat, nigga. **I'm a fucking, so I burn this bitch down and chop y'all down piece by piece, nigga.** Okay? **Then I sleep with a fucking machete right beside my head, nigga. I don't need no fucking gun.**

During the call, BRICE also said that he was in Georgia, refused to provide his address, and that he was homeless. Multiple times throughout the call, BRICE acknowledged Victim 2 as a "special agent."

## CONCLUSION

14. Based on the foregoing, I submit there is probable cause that on or about March 19, 2025, BRICE threatened to assault and kill a federal law enforcement officer, in violation of 18 U.S.C. § 115(a)(1)(B).

Respectfully submitted,

Jessica L Hurak

Special Agent Jessica Hurak
Treasury Inspector General for Tax Administration

Affidavit submitted by e-mail and attested to me as true and accurate via Zoom/video conferencing consistent with the Fed. R. Crim. P. 4.1 and 41(d)(3), this 4th day of April 2025.

Leslie Hoffman Price

HONORABLE LESLIE HOFFMAN PRICE
United States Magistrate Judge