UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 8:25-cr-207-TPB-CPT

STEPHANE BRICE

**PLEA AGREEMENT**

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Gregory W. Kehoe, United States Attorney for the Middle District of Florida, and the defendant, STEPHANE BRICE, and the attorney for the defendant, DOUGLAS STAMM, mutually agree as follows:

**A. Particularized Terms**

1. Count Pleading To

The defendant shall enter a plea of guilty to Count One of the Indictment. Count One charges the defendant with Threat to a Federal Law Enforcement Officer, in violation of 18 U.S.C. §§ 115(a)(1)(B) and 115(b)(4).

2. Maximum Penalties

Count One carries a maximum sentence of not more than 10 years of imprisonment, a fine of up to $250,000, or both a term of imprisonment and a fine, a term of supervised release of not more than three years, and a special assessment of $100. A violation of the terms and conditions of supervised release carries a maximum

sentence of not more than two years of imprisonment, as well as the possibility of an additional term of supervised release.

3. Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

First: The Defendant threatened to assault or murder, a Federal law enforcement officer; and

Second: In making the threat, the Defendant intended to impede, or interfere with such law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such law enforcement officer on account of performance of official duties.

4. Counts Dismissed

At the time of sentencing, the remaining count against the defendant, Count Two, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

6. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in

the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

## B. Standard Terms and Conditions

### 1. Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing.

### 2. Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from

imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly,

including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the

attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right

to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11. Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no

other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 5 day of ~~November~~ December 2025.

GREGORY W. KEHOE
United States Attorney

STEPHANE BRICE
Defendant

KELLY S. MILLIRON
Assistant United States Attorney

DOUGLAS STAMM
Attorney for Defendant

~~DANIEL J. MARCET~~
Assistant United States Attorney
Chief, ~~National Security~~ Special Prosecutions

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 8:25-cr-207-TPB-CPT

STEPHANE BRICE

PERSONALIZATION OF ELEMENTS

1. Do you admit that on March 19, 2025, in the Middle District of Florida, you threatened to murder a Federal Law Enforcement Officer when you told a Treasury Administration Special Agent (TIGTA SA) that you would "cut" the Agent's "head off" and "burn" the Agent's "house down with" the officer's "children and your family inside?"

2. Do you admit that, in making the threat, you did so with the intent to impede, intimidate, or interfere with the law enforcement officer (TIGTA SA) while he was engaged in the performance of his official duties?

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 8:25-cr-207-TPB-CPT

STEPHANE BRICE

FACTUAL BASIS

On March 19, 2025, the defendant, Stephane Brice, threatened to assault and kill a federal law enforcement agent during the agent's investigation of the defendant for similarly threatening an Internal Revenue Service (IRS) employee in a call the day before. Specifically, on March 18, 2025, at about 9:15AM, the defendant called the IRS and complained about never receiving his 2021 tax refund. He called a general IRS phone number for assistance and the call routed to an employee in Puerto Rico, Victim 1. Victim 1 and the defendant spoke for about two hours. During the call, the defendant grew frustrated, saying how he previously went in person to the Orlando IRS office for this issue, but no one helped him resolve it. The defendant then began accusing Victim 1 and the IRS of stealing his money.

While speaking with the employee, the defendant then threatened to visit the IRS office and kill people inside, particularly employees. The defendant threatened that he would kill each person by taking off their heads, so that everyone would know it was him, and that would be his "signature" when he killed. The defendant told Victim 1 not to doubt that he could do everything he said. After these initial threats,

Victim 1 tried to calm the defendant down and pressed a panic button that caused a recording of the remainder of the conversation, which last about seven minutes.

In the final seven minutes, the defendant threatened Victim 1 directly, saying that Victim 1 would see the defendant arrive at her office and shake in fear in her chair as the defendant killed people in the office. The defendant also stated he was willing to take a life, multiple ones, "to take what's mine." Victim 1 continued trying to calm down the defendant, but that she also needed to conclude the call.

Due to the defendant's threats towards Victim 1 and IRS officers, on the same day, a Treasury Inspector General for Tax Administration (TIGTA) Special Agent, Victim 2, immediately began investigating the defendant's location, principally with the goal of ensuring he did not intend to carry out these threats against Victim 1 or at an IRS Office. Victim 2 contacted Victim 1, learned of the situation, then researched the defendant's last known address located in Winter Haven, Florida. Victim 2 went to a last known address for the defendant, spoke with the current resident, but determined the defendant no longer lived there.

By the following morning, Victim 2 identified a phone number for the defendant. At about 10:10AM, as captured on body worn camera, Victim 2 called the defendant and spoke with him for about 30 minutes. The defendant confirmed his identity, and Victim 2 identified himself as a special agent with the Treasury Department. Victim 2 also said he was calling about a threat that the defendant made to an IRS employee the day before. At the beginning of the call, the defendant immediately became agitated. He raised his voice and often spoke over Victim 2.

About 1 minute and 13 seconds into the call, Victim 2 stated, "It is a violation of law to make a threat to/against a federal employee . . . we gotta be clear on this, that if you make any threats to any IRS employee or any federal employee, it's a violation of law." Victim 2 reiterated this admonishment to the defendant repeatedly throughout the call. After Victim 2's warning, BRICE made the following threats:

> BRICE: Y'all can't even fucking do your job. Bitch ass n***. You wanna tell me about my fucking money n***? Talking about making a threat. Fucking shut that mother f******* threat up your ass. And you wanna know where I'm at. I'm in fucking Georgia, my n****. Come up wherever I'm at, my n****. **Cut your fucking head off. That's a threat bitch ass n****.** You wanna know about threat.
>
> BRICE: How mad could I be my n****? I would rip [your] motherfucking soul through this phone screaming if I was real deal Mad n****. You don't know who the f*** you dealing with.
>
> BRICE: Bro. You brother. **I don't give a f*** how you can think you was, I would chop your ass up like a real Haitian dude, bro. And burn your f****** house down with all your children and your family inside this bitch.** F*** on with you.
>
> BRICE: As a mother f****** threat, n****. **I'm a f******, so I burn this bitch down and chop y'all down piece by piece, n****.** Okay? **Then I sleep with a f****** machete right beside my head, n****. I don't need no f****** gun.**

During the call, the defendant said that he was in Georgia but refused to provide his address. A historical cell site search warrant return revealed the defendant was located in Georgia during both threatening calls on March 18th and 19th.