UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 8:25-cr-00207-TPB-CPT

STEPHANE BRICE

# UNITED STATES' SENTENCING MEMORANDUM

Based on the significant increase in threats against Federal officials, and the serious and urgent need for deterrence, the United States respectfully requests that the Court sentence the defendant, Stephane Brice, to a meaningful term of imprisonment. A sentence of 27 months, at the midpoint of the Sentencing Guidelines range of 24 to 30 months, is sufficient, but not greater than necessary, to achieve the goals of sentencing and to provide adequate deterrence against future criminal conduct.

## I. BACKGROUND

### a. Facts

On March 19, 2025, the defendant, Stephane Brice, threatened to assault and kill a federal law enforcement agent during the agent's investigation of the defendant for similarly threatening an Internal Revenue Service (IRS) employee in a call the day before. Specifically, on March 18, 2025, at about 9:15AM, the defendant called the IRS and complained about never receiving his 2021 tax refund. He called a general IRS phone number for assistance and the call routed to an employee in Puerto Rico, Victim 1. Victim 1 and the defendant spoke for about two hours. During the call, the

defendant grew frustrated, saying how he previously went in person to the Orlando IRS office for this issue, but no one helped him resolve it. The defendant then began accusing Victim 1 and the IRS of stealing his money.

While speaking with the employee, the defendant then threatened to visit the IRS office and kill people inside, particularly employees. The defendant threatened that he would kill each person by taking off their heads, so that everyone would know it was him, and that would be his "signature" when he killed. The defendant told Victim 1 not to doubt that he could do everything he said. After these initial threats, Victim 1 tried to calm the defendant down and pressed a panic button that caused a recording of the remainder of the conversation, which last about seven minutes.

In the final seven minutes, the defendant threatened Victim 1 directly, saying that Victim 1 would see the defendant arrive at her office and shake in fear in her chair as the defendant killed people in the office. The defendant also stated he was willing to take a life, multiple ones, "to take what's mine." Victim 1 continued trying to calm down the defendant, but that she also needed to conclude the call.

Due to the defendant's threats towards Victim 1 and IRS officers, on the same day, a Treasury Inspector General for Tax Administration (TIGTA) Special Agent, Victim 2, immediately began investigating the defendant's location, principally with the goal of ensuring he did not intend to carry out these threats against Victim 1 or at an IRS Office. Victim 2 contacted Victim 1, learned of the situation, then researched the defendant's last known address located in Winter Haven, Florida. Victim 2 went to a last known address for the defendant, spoke with the current resident, but

determined the defendant no longer lived there.

By the following morning, Victim 2 identified a phone number for the defendant. At about 10:10AM, as captured on body worn camera, Victim 2 called the defendant and spoke with him for about 30 minutes. The defendant confirmed his identity, and Victim 2 identified himself as a special agent with the Treasury Department. Victim 2 also said he was calling about a threat that the defendant made to an IRS employee the day before. At the beginning of the call, the defendant immediately became agitated. He raised his voice and often spoke over Victim 2. About 1 minute and 13 seconds into the call, Victim 2 stated, "It is a violation of law to make a threat to/against a federal employee . . . we gotta be clear on this, that if you make any threats to any IRS employee or any federal employee, it's a violation of law." Victim 2 reiterated this admonishment to the defendant repeatedly throughout the call. After Victim 2's warning, BRICE made the following threats:

BRICE: Y'all can't even fucking do your job. Bitch ass n***. You wanna tell me about my fucking money n***? Talking about making a threat. Fucking shut that mother f******* threat up your ass. And you wanna know where I'm at. I'm in fucking Georgia, my n****. Come up wherever I'm at, my n****. Cut your fucking head off. That's a threat bitch ass n****. You wanna know about threat.

BRICE: How mad could I be my n****? I would rip [your] motherfucking soul through this phone screaming if I was real deal Mad n****. You don't know who the f*** you dealing with.

BRICE: Bro. You brother. I don't give a f*** how you can think you was, I would chop your ass up like a real Haitian dude, bro. And burn your f****** house down with all your children and your family inside this bitch. F*** on with you.

BRICE: As a mother f****** threat, n****. I'm a f******, so I burn this bitch down and chop y'all down piece by piece, n****. Okay? Then I sleep with a f****** machete right beside my head, n****. I don't need no f****** gun.

During the call, the defendant said that he was in Georgia but refused to provide

his address. A historical cell site search warrant return revealed the defendant was located in Georgia during both threatening calls on March 18th and 19th.

**b. Procedural History**

On April 4, 2025, a Treasury Inspector General for Tax Administrator (TIGTA) Special Agent swore out a Complaint before the Honorable Leslie Hoffman Price. The defendant was arrested on April 7, 2025, and a detention hearing was held on April 9, 2025 at the Southern District of Georgia. On April 18, 2025, an Initial Appearance was held at the Middle District of Florida before Honorable Magistrate Judge Robert M. Norway, where Brice was ordered detained pending a Preliminary Hearing.

On April 30, 2025, a grand jury returned an indictment charging Stephane Brice with one count of Threat to a Federal Law Enforcement Officer in violation of 18 U.S.C. §§ 115(a)(1)(B) and 115(b)(4); and one count of Transmitting Threat in Interstate Commerce in violation of 18 U.S.C. § 875(c). The defendant was arraigned on May 20, 2025.

On November 4, 2025, a Competency Hearing was held by Honorable Magistrate Judge Christopher P. Tuite and the Court found by a preponderance of the evidence that "the Defendant is competent to proceed in this action, in that he has a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and . . . a rational as well as factual understanding of the proceedings against him."

On January 6, 2026, defendant Stephane Brice pleaded guilty as to Count One of the Indictment. On January 7, 2026, the Court accepted the defendant's plea of guilty.

The Probation Officer has determined that the appropriate sentencing guideline range is 24 to 30 months, based on an adjusted total offense level of 17 and criminal history category of I. PSR ¶ 62.

Sentencing in this case is scheduled for April 2, 2026.

## II. SECTION 3553(a) FACTORS

In sentencing the defendant, the Court must take into account the factors set forth in 18 U.S.C. § 3553(a), as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
> (I) issued by the Sentencing Commission ....; and
> (II) that, ... are in effect on the date the defendant is sentenced; …
>
> (5) any pertinent policy statement—

> (A) issued by the Sentencing Commission … and
> (B) that, ... is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## III. SENTENCING ARGUMENT

The defendant's choice to threaten violence against a federal law enforcement officer with whom he disagreed demonstrates a lack of self-control and a lack of respect, not just for the individual federal official, but for the rule of law more generally.

The defendant's criminal conduct in this case, and the nature of his offense, is especially serious. With threats against federal officials increasing, it is particularly crucial that the sentence imposed "reflect[s] the seriousness of" the offense and "afford[s] adequate deterrence to criminal conduct." 18 U.S.C. § 3552(a)(2)(A), (B).

Threats, such as the ones in this case, are crimes of violence,[1] and fall well outside the bounds of the First Amendment. When an individual sends threats to public officials, "all the harms that have long made threats unprotected naturally follow. True threats subject individuals to 'fear of violence' and to the many kinds of 'disruption that fear engenders.'"[2]

---

[1] 18 U.S.C. § 16
[2] *Counterman v. Colorado*, 600 U.S. 66, 74 (2023) (citing *Virginia v. Black*, 538 U.S. 343, 360 (2003)).

In order to properly evaluate the need for both specific and general deterrence, it is important to consider the context in which the defendant communicated his serious and offensive threats. Threats against federal officials are on the rise. The pervasive rise in threats against federal officials creates a real risk that expressions of violence will become normalized. The new threat landscape has caused public officials to change the way they perform their duties, and the increase in threats has shown to have an impact on individuals' willingness to perform public service.[3] These threats were abusive, offensive, and violently specific.

The defendant's threats against a federal law enforcement officer were based on the performance of their official duties. However, this case is even more egregious than most because the defendant chose to take the additional step of threatening violence, not only against the federal law enforcement officer, but also against family members.

The effective functioning of the United States requires a respect for and adherence to the rule of law. Without it, the government is unable to "establish Justice, insure domestic Tranquility," or "promote the general Welfare,"—three of the six objectives outlined in the preamble to the U.S. Constitution.[4] Threats to federal law enforcement officers seek to undermine that respect for and adherence to the rule of law, and to disrupt the effective functioning of the government.

---

[3] *See*, *'We'll See You at Your House': How Fear and Menace are Transforming Politics*, Danny Hakim, Ken Bensinger, and Eileen Sullivan, NEW YORK TIMES, May 19, 2024, available at: https://www.nytimes.com/2024/05/19/us/politics/political-violence.html

[4] U.S. CONST., Preamble.

The serious nature of the defendant's violent threats cries out for a meaningful sentence of imprisonment to afford effective general deterrence. The public needs to recognize that threatening violence against a federal official will result in serious sentences of imprisonment.

## IV. CONCLUSION

For all the foregoing reasons, a sentence of 27 months is sufficient, but not greater than necessary, to achieve the goals of sentencing, including the need to provide adequate deterrence against future criminal conduct.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By: */s/ Joseph H. Wheeler, III*
Joseph H. Wheeler, III
Special Assistant United States Attorney
Florida Bar No. 87451
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Joseph.Wheeler2@usdoj.gov

**U.S. v. Stephane Brice** **Case No. 8:25-cr-00207-TPB-CPT**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Douglas Jordan Stamm, Esq.

By: *[/s/ Joseph H. Wheeler, III]*

Joseph H. Wheeler, III
Special Assistant United States Attorney
Florida Bar No. 87451
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Joseph.Wheeler2@usdoj.gov